**In re SOCIETE GENERALE DES EAUX MINERALES DE VITTEL S.A.**

No. 87–1127.

United States Court of Appeals, Federal Circuit.

July 14, 1987.

Paul F. Kilmer, Mason, Fenwick & Lawrence, Washington, D.C., for appellant.

Albin F. Drost, Office of the Solicitor, Arlington, Va., for appellee.

Before MARKEY, Chief Judge, RICH and BISSELL, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the 30 September 1986 decision of the United States Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board), 1 USPQ2d 1296, affirming the refusal by the Trademark Examining Attorney to register the mark VITTEL and bottle design for enumerated cosmetic products on the application of Societe Generale Des Eaux Minerales De Vittel, S.A. (Vittel), serial No. 398,038, filed 30 September 1982. Refusal to register was under section 2(e)(2) of the Lanham Act (15 U.S.C. § 1052(e)(2)) on the

ground that the mark is "primarily geographically descriptive" of the goods. We reverse.

### Facts

The U.S. application to register was filed on the basis of a French registration under 15 U.S.C. § 1126(c), wherefore no use of the mark in this country was alleged. No evidence of any use in this country has been submitted.

The application was filed by the owner of the French registration, appellant here, whose place of business as stated in the application is in the town of Vittel, France, the presumed source of the goods named in the application.

The Examining Attorney of the PTO, in support of her refusal to register, cited geographical references which show that Vittel is the name of a town in northeastern France in the Department of Voges, in the Voges mountains, which, in about 1962, had a population of 5476, had cold mineral water springs, and was known as a watering place, spa, and resort. It produced Vittel salts, pastilles, and bottled water and had a brewery. While the evidence shows that the mineral water was "exported," there is no evidence it was exported to or generally known in the United States. There are some NEXIS extracts from the New York Times, produced by the Examining Attorney, showing that that paper's travel and "living" sections have referred to Vittel as one of several French "famous spas" and they made reference to "Vittel mineral water." Two NEXIS items included are duplicative obituary items about a famous chef who died in 1983 while playing tennis in Vittel, "a spa in eastern France." It is indeed remarkable to see the thoroughness with which NEXIS can regurgitate a placename casually mentioned in the news.

The mark sought to be registered is described in the application as follows:

The trademark consists of a bottle configuration and the designation VITTEL; the upper part of Applicant's label is white with the word VITTEL in red letters; the label gradually fades to blue in the lower part of the label; the flask and cap are blue.

There is also a drawing, described above, here reproduced.

The goods recited in the application are listed as follows:

Soaps, Essential Oils, Cosmetics, Hair Lotions; Toilet Waters, Perfumes, Aftershaves, Toilet Milks, Talc, Bath Oils; Powders, Creams, Milks, Lotions, Tonics, and Masks for Body and Face Care in I.C. 3;

and Sanitary Substances in I.C. 5.

With respect to the last-mentioned item in I.C. (International Classification) 5, there was a second ground of rejection—a requirement for more specific identification—which was dealt with in the board opinion at length, but it is not on appeal.

The refusal to register is predicated on the alleged proscription of the following statute, 15 U.S.C. § 1052(e)(2):

No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

. . . .

(e) Consists of a mark which ... (2) when applied to the goods of the applicant is *primarily geographically descriptive* or deceptively misdescriptive of them.... [Emphasis ours.]

The Examining Attorney relied entirely on the emphasized provision and there is no question here of deceptive misdescriptive-

ness. Her position was simply that there is nothing distinctive about the trade dress or the container configuration and Vittel is geographically descriptive of the goods because it is the place where applicant is located, the implication being that it is also the place from which the goods come.

The board, in affirming the refusal to register and no doubt aware that the meaning of "primarily geographically descriptive" has been much discussed in many cases and texts, took a more sophisticated approach. It began its discussion by saying, correctly:

> [W]here a refusal of registration is based on the finding that a mark is primarily geographically descriptive of the goods, that is, the goods actually come from the geographical place designated in the mark, the Examining Attorney must submit evidence to establish a public association of the goods with that place if, for example, there exists a genuine issue raised that the place named in the mark is *so obscure or remote that purchasers would fail to recognize* the term as indicating the geographical source of the goods.... [Emphasis ours.]

The board then reviewed the Examining Attorney's evidence which we have summarized above and said it was persuaded that there does exist a "genuine issue" whether Vittel is "sufficiently remote or obscure that purchasers would fail to recognize the term as indicating the geographical source of the goods." Having determined the existence of the issue, the board said it must determine the sufficiency of the evidence "to establish a public association between any or all of the goods covered in appellant's application and Vittel, France." The board concluded, of course, that the evidence sufficed to show there would be the necessary association.

## OPINION

The two most significant precedents in this court on the difficult problem of what is meant by "primarily geographically descriptive," although they both dealt with the deceptively misdescriptive aspect of § 2(e)(2), are *In re Loew's Theaters, Inc.,* 769 F.2d 764, 226 USPQ 865 (Fed.Cir.1985) (DURANGO for chewing tobacco), and *In re Nantucket, Inc.,* 677 F.2d 95, 213 USPQ 889 (CCPA 1982) (NANTUCKET for men's shirts), the former reconfirming the latter.

■ As the board clearly realized, a first principle derivable from those cases is that a prima facie case of unregistrability cannot be made out simply by evidence showing that the mark sought to be registered is the name of a place known generally to the public; it is also necessary to show that the public would make a goods/place association, i.e., believe that the goods for which the mark is sought to be registered originate in that place. To hold such a belief, it is necessary, of course, that the purchasers perceive the mark as a place name and this is where the question of obscurity or remoteness comes to the fore.

In dealing with all of these questions of the public's response to word symbols, we are dealing with the supposed reactions of a segment of the American public, in this case the mill-run of cosmetics purchasers, not with the unusually well-travelled, the aficionados of European watering places, or with computer operators checking out the meaning of strange words on NEXIS.

■ There can be no doubt that the PTO has established that Vittel is in fact the name of a small town in the Voges mountain region of France where there is a resort with mineral springs—a spa—where the water is bottled and thence distributed somewhere, but how many people in this country know that? Certainly Vittel is remote and we deem the evidence produced by the PTO insufficient to show that it is not obscure. We think the evidence is inadequate to show that the bulk of cosmetics purchasers, or even a significant portion of them, would, upon seeing the word Vittel on a bottle of skin lotion or the like, conclude that it is a place name and that the lotion came from there, rather than simply a trademark or trade name of a manufacturer like Chanel, Bourgois, or Vuitton.

While we consider the evidence insufficient to show that Vittel mineral water has ever been available in this country to such

an extent as to have become generally known here, the reasoning of the board appears to have rested on the contrary assumption that it supports a conclusion that a domestic public association exists between Vittel, France, and mineral water. We take the reference to the public to mean the American public because the board was well aware that we are not concerned with the public in other countries; it properly ignored an article cited by the Examining Attorney from the *Manchester Guardian Weekly* saying, "this British publication is not evidence of the perception of the term [Vittel] by people in the United States." Nevertheless, the board pursued a line of reasoning based on the Vittel-mineral water association epitomized by the following:

> [A]pplicant's goods ... are products which would ordinarily be associated with the sort of products one would encounter in a health or resort spa. Similarly, the public association established between Vittel and mineral water would likely result, in our opinion, in people's believing that Vittel lotions or tonics were somehow formulated with or otherwise related to the mineral waters of Vittel.

We think this attempt to somehow relate appellant's goods with health spas and mineral water fails in this case for want of evidence showing that the American cosmetic-purchasing public is aware of the existence of Vittel, France, or with its production of mineral water. In short, the evidence is insufficient to show the likelihood of that segment of the public thinking that Vittel refers to a place where the goods come from. Vittel is therefore not primarily geographically descriptive, at least in this country which is all that matters.

We believe that this case should be placed in the category of two recent board opinions, one of which it cited in its opinion in this case on a "compare" basis. That case is *In re Brauerie: Aying Franz Inselkammer KG*, 217 USPQ 73 (TTAB 1983). There the board reversed a refusal based on § 2(e)(2) to register AYINGER BIER for beer, as it said in the opinion here, "on the ground that no public association was shown between Aying, a tiny German hamlet and beer or any other product." Furthermore, the opinion in the *Brauerie* case shows that Aying is a suburb of Munich, that the beer comes from there, and the specimen labels, in picture and words, show the brewery to be located in Aying. As here, the application was based on a foreign registration, no use of the label or the mark in this country was shown, and no goods/place association in the public mind in this country was established. The other case is *In re Bavaria St. Pauli Brauerie AG*, 222 USPQ 926 (TTAB 1984) in which the board reversed a refusal to register JEVER (and design) under § 2(e)(2) on the basis of a reference showing that Jever is a town of 10,342 ten miles from Wilhelmshaven in northwest Germany. The beer was made there. Again relying on our *Nantucket* case (concurring opinion of Judge Nies), the board posed the question "whether the purchasing public in America would expect a beer labelled 'JEVER' to come from Jever, West Germany." The board answered that "A single entry from a thirty-two year old geographical index has not convinced us that they would," and characterized the town of Jever as "relatively obscure." We think the evidence here leaves Vittel in the same category and note that the board never made any clear finding to the contrary but only found a goods/place connection between Vittel and a mineral water spa, attempting to reason from there that appellant's goods would be associated with a spa or with mineral water and thus with Vittel.

For the above reasons, the decision of the board affirming the refusal to register appellant's mark under § 2(e)(2) is *reversed*.

REVERSED.