Paper No. 9
RLS/JMP

THIS DISPOSITION IS CITABLE AS
PRECEDENT OF THE TTAB  11/30/00

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Boyd Gaming Corporation
_____

Serial Nos. 75/541,256; 75/559,780; and 75/559,786
_____

Whitney Thier of Quirk & Tratos for Boyd Gaming Corporation

David C. Reihner, Trademark Examining Attorney, Law Office 107 (Thomas Lamone, Managing Attorney)
_____

Before Simms, Seeherman and Bottorff, Administrative Trademark Judges.

Opinion by Simms, Administrative Trademark Judge:

Boyd Gaming Corporation (applicant), a Nevada corporation, has appealed from the final refusals of the Trademark Examining Attorney to register the mark shown below:

for various wearing apparel in Application Serial Number 75/559,780, and for various beauty products and perfumes in

Application Serial Number 75/559,786.[1]  Applicant has also

appealed from the refusal to register the mark HAVANA

RESORT & CASINO for the same items of wearing apparel that

are set forth in Serial No. 75/559,780.[2]  The Examining

Attorney has refused registration under Section 2(e)(3) of

the Act, 15 U.S.C. §1052(e)(3), arguing that applicant's

asserted marks are primarily geographically deceptively

misdescriptive of its goods.[3]  Applicant and the Examining

---

[1] Both applications were filed September 25, 1998, and assert applicant's bona fide intention to use the mark in commerce.  The first listed application seeks to register the mark for the following goods:

> wearing apparel, namely, polo shirts, t-shirts, tank tops, shirts, jackets, jogging suits, sweat shirts, sweat pants, jeans, pants, robes, sleepwear, rompers, scarves, socks, slippers, hats and caps.

In the second listed application, applicant seeks to register the mark for the following goods:

> colognes; perfumes; body lotion; skin care products, namely, skin cleansing lotion, skin creams, skin moisturizers, skin cleansing cream, facial cleansers, facial creams, facial masks, facial scrubs, facial moisturizer; facial lotions; bath and shower gels; bath oils; bath soaps; aroma therapy products, namely, aroma therapy oils; sun screens, suntan lotions; hair shampoo; hair conditioner; body powder; lip gloss; facial cosmetics, namely, foundation, concealer, face powder, blush, eye shadow, eye liner, mascara, lip stick, and lip pencils.

[2] Application Serial No. 75/541,256, filed August 24, 1998, based on applicant's bona fide intention to use the mark in commerce.
[3] This section of the Act bars registration of a mark which

> (3) when used on or in connection with the goods of the applicant is primarily geographically deceptively misdescriptive of them…

Attorney have submitted briefs, but no oral argument was requested.

We affirm.

The Examining Attorney argues that applicant's marks are barred from registration because the primary significance of applicant's marks as a whole is the geographic place "Havana"; that there is a goods/place association between the goods in applicant's applications and the capital city of Cuba; and that applicant's goods do not come from Havana. Both the Examining Attorney and applicant's attorney have agreed that Havana is a major city in Cuba and that applicant's goods do not come from that city.

The Examining Attorney acknowledges that the entire marks are more than the name of Cuba's capital city. However, the Examining Attorney argues that the overall impressions of applicant's marks do not detract from the geographic significance of the word "Havana" contained in the marks. According to the Examining Attorney, the marks as a whole emphasize that applicant's goods have their origin in Havana.

Further, in view of the evidence of a goods/place association which the Examining Attorney has placed in the record of these applications, the Examining Attorney argues

3

that the public is likely to believe that applicant's goods come from Havana, Cuba. In this regard, the Examining Attorney points out that Havana produces a variety of goods, including clothing and cosmetic items similar to the goods in these applications. Because of this, the Examining Attorney argues that Havana will be associated with applicant's goods.

Applicant's attorney indicates that applicant owns numerous resort hotels and riverboat casinos throughout the United States, including the Stardust hotel and casino in Las Vegas, Nevada. Applicant seeks to build a resort hotel casino under the marks sought to be registered and to sell merchandise under these marks. It is applicant's position that it is not likely that consumers purchasing applicant's wearing apparel, cosmetics and other goods from its resort located in the United States will believe that the "Havana" portion of its marks is an indicator of the geographic location of applicant's goods. Rather, according to applicant, purchasers will view applicant's marks in their entireties and believe that applicant's goods emanate from the resort hotel casino bearing that name. In this regard, applicant contends that, because its resort hotel services will also be offered under the asserted marks, the marks sought to be registered are or will be indicators of

4

secondary source, that is, the resort hotel and casino itself.

Applicant states that, currently, a number of resort hotels use fantasy themes suggested by such names as RIO, NEW YORK NEW YORK, LUXOR, PARIS and VENETIAN,[4] and that applicant's resort casino is intended to evoke the aura or fantasy of being in 1950's pre-Castro Cuba. Accordingly, it is applicant's position that the marks, including the name "Havana", are arbitrary or suggestive, being reminiscent of the Havana, Cuba, of a bygone era.

Further, because of the embargo on all Cuban products, it is illegal under U.S. law to import and sell Cuban goods. Applicant maintains, therefore, that no reasonable consumer will believe that applicant's goods come from Havana, Cuba. In any event, applicant argues that people do not associate wearing apparel and beauty products with Cuba. Because the marks do not designate the geographical origin of applicant's goods, applicant contends that its

---

[4] Applicant indicated in its response to the first Office action that some of these marks had been registered, indicating the registration numbers. Although applicant has not submitted copies of any third-party registrations, the Examining Attorney did not object to applicant's reference to these registrations and in fact made no mention of these marks at all. Accordingly, we have considered them to be of record. However, in its brief, applicant also noted, for the first time, other registrations of geographic terms for other goods and services. We have not considered these to be of record. See Trademark Rule 2.142(d).

marks are not *primarily* geographically deceptively misdescriptive of the goods.

In rebuttal of applicant's argument, the Examining Attorney argues that it is reasonable to believe that a segment of the U.S. public does not know that a trade embargo exists on Cuban goods. Also, according to the Examining Attorney, Americans who travel to countries that conduct trade with Cuba, such as Canada and Spain, may buy Cuban goods in those foreign countries. Further, the Examining Attorney argues that, even if purchasers know of the trade embargo on Cuban goods, those people may still make a goods/place association because they may believe that there is an affiliation between the U.S. distributor or provider of the goods and a Havana, Cuba, producer of those goods, such as a parent-subsidiary or licensor-licensee relationship. The Examining Attorney also contends that, if and when the trade embargo is eventually lifted, then a goods/place association will exist so that any registrations issued to applicant will be defective. Accordingly, the Examining Attorney argues that the trade embargo provides no justification for registration.

With respect to the suggestive significance which applicant contends the marks create, the Examining Attorney argues, appeal brief, 5, that there is no evidence that

6

purchasers will perceive any association with pre-Castro Cuba when purchasing applicant's goods, and that purchasers will not understand applicant's mark as indicating sponsorship by applicant's establishment rather than indicating geographic origin.

> …The goods identified by a geographical mark may or may not always be sold in conjunction with other displays or promotions or services, so that considering the size and image of applicant's resort and casino where its goods will be sold, when determining registrability, is inappropriate…
> Further, even if the patrons of applicant's proposed resort and casino believed that the goods were actually produced at applicant's Las Vegas, Nevada, resort and casino location, there is nothing to dissuade those people from believing that there is an association between the goods and Havana, Cuba…

Upon careful consideration of this record and the arguments of the attorneys, we agree with the Examining Attorney that applicant's asserted marks are primarily geographically deceptively misdescriptive.

In order to establish a *prima facie* case for refusal because a mark is primarily geographically deceptively misdescriptive under Section 2(e)(3) of the Act, the Examining Attorney must show that the primary significance of the mark is geographic; that purchasers would be likely to think that the goods originate in the geographic place identified in the mark, that is, purchasers would make a

7

goods/place association; and that the goods do not in fact originate in the place identified in the mark. In re Wada, 194 F.3d 1297, 52 USPQ2d 1539 (Fed. Cir. 1999)(NEW YORK WAYS GALLERY for various types of bags, backpacks, purses, etc., held unregistrable under Section 2(e)(3)); In re Societe Generale des Eaux Minerales de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987); In re Loew's Theatres, Inc., 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985); and In re Nantucket, Inc., 677 F.2d 95, 213 USPQ 889 (CCPA 1982).

While applicant's asserted marks contain more words than the geographic location "Havana," we agree with the Examining Attorney that the primary significance of the marks is geographic. See *Wada*, supra, and In re Bacardi & Co. Ltd., 48 USPQ2d 1031, 1033 (TTAB 1997)(HAVANA SELECT, HAVANA CLASICO, OLD HAVANA, HAVANA PRIMO and HAVANA CLIPPER for rum held unregistrable under Section 2(e)(3)). We do not believe that the additional wording in applicant's marks detracts from the geographic meaning. Further, it is our belief that purchasers seeing applicant's goods in applicant's resort hotel and casino as well as, possibly,

in retail stores in this country,[5] will believe that those goods either emanate from or are authorized, sponsored or licensed by a resort casino bearing that name in Havana, Cuba, even though it is apparently not the name of an actual resort in Havana. In this regard, the evidence submitted by the Examining Attorney sufficiently establishes a goods/place association between wearing apparel and cosmetics and the city of Havana, a major metropolitan city. See for example, *Nantucket*, *supra*, Nies J., concurring, 213 USPQ at 895-96 (by way of illustration, CHICAGO for shirts would be protectable only upon the establishment of secondary meaning). Also, there is evidence that tourism in Cuba has increased since the mid-1980s with the construction of new hotels and resorts. This makes more likely an association of the mark with hotels and resorts in Cuba. See In re Kimpton Hotel & Restaurant Group Inc., 55 USPQ2d 1154 (TTAB 2000)(HOTEL MONACO held primarily geographically deceptively misdescriptive of hotel services).

---

[5] Applicant's description of goods contains no limitation as to the channels of trade in which its goods will be sold. Accordingly, we must consider that applicant's goods will be sold in all reasonable channels of trade, including retail stores which may carry this merchandise. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n, 811 F.2d 1490, 1493, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987).

With respect to applicant's argument concerning the alleged significance of applicant's marks suggesting an association with 1950's pre-Castro Cuba, we believe what the Board stated in the *Bacardi* case, at 1034, is applicable here:

> [A]pplicant has submitted absolutely no evidence to establish in this record that the relevant purchasers would make such an association.  Further, even if applicant had established an association between HAVANA and a particular lifestyle, such association would not contradict the primary geographic significance of the term, as the association may be made precisely because of the primary significance of HAVANA as a city in Cuba.

See also *Wada,* 52 USPQ2d at 1540-41.

To the extent that applicant is arguing that potential purchasers will associate applicant's goods with its resort hotel and casino, which apparently does not yet exist, presumably on the basis of acquired distinctiveness, suffice it to say that registrability pursuant to Section 2(f) is not available to marks which are primarily geographically deceptively misdescriptive unless they became distinctive of those goods in commerce before the date of enactment of the North American Free Trade Agreement Implementation Act (December 8, 1993).  See Fred Hayman Beverly Hills Inc. v. Jacques Bernier Inc., 38 USPQ2d 1691, 1692 (TTAB 1996).

10

With respect to the third-party registrations of a number of geographic names, each application for registration of a mark for particular goods or services must be separately evaluated. See In re BankAmerica Corporation, 231 USPQ 873, 876 (TTAB 1986) and cases cited therein. We do not know what records were before the Examining Attorneys in those cases. In the *BankAmerica* case, we noted that Section 20 of the Trademark Act gives the Board authority to decide appeals from adverse final decisions of Examining Attorneys and that this duty may not and should not be delegated by adoption of conclusions reached by Examining Attorneys in different cases on different records. Nor should the fact that the Examining Attorney may have allowed applicant's service mark applications for casino resort services have persuasive effect here.

We conclude that the Examining Attorney has made out a *prima facie* case that applicant's marks have primary geographic significance and that a goods/place association exists between applicant's goods and the city of Havana, and applicant has presented no evidence to rebut this showing.

Decision:  The refusal of registration in each application is affirmed.

R. L. Simms

E. J. Seeherman

C. M. Bottorff
Administrative Trademark
Judges, Trademark Trial
and Appeal Board