THIS DISPOSITION IS
CITABLE AS PRECEDENT OF
THE TTAB

Mailed: June 8, 2006

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re Joint-Stock Company "Baik"[1]
_____

Serial No. 78341041
_____

James C. Wray of Law Offices of James C. Wray for Joint-Stock Company "Baik".

Esther Belenker, Trademark Examining Attorney, Law Office 111 (Craig D. Taylor, Managing Attorney).
_____

Before Zervas, Kuhlke and Walsh, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Joint-Stock Company "Baik," a Russian company located in Irkutsk, Russia, has filed an application to register BAIKALSKAYA (in standard character form) on the Principal Register for "vodka" in International Class 33, alleging a bona fide intent to use the mark in commerce.

The examining attorney refused registration under Section 2(e)(2) of the Trademark Act, 15 U.S.C.

---

[1] The assignment records show that this application, originally filed in the name of Irkutsk Joint-Stock Company "Kedr," was ultimately assigned to Joint-Stock Company "Baik." See Reel/Frame Nos. 3016/0306 and 3087/0011.

§1052(e)(2), on the ground that applicant's mark is primarily geographically descriptive of its goods, and under Section 2(e)(1) of the Trademark Act, 15 U.S.C. §1052(e)(1), on the ground that applicant's mark is merely descriptive of its goods. In addition, the examining attorney required applicant to "explain where the vodka is manufactured, and where the water for the vodka comes from, for the record." Office Action (July 19, 2004). Applicant responded to the refusals under Sections 2(e)(1) and 2(e)(2); however, applicant did not respond to the request for information about the vodka.[2]

When the refusals were made final, applicant appealed. Briefs have been filed, but applicant did not request an oral hearing. We affirm the refusal to register under Section 2(e)(2).

### Primarily Geographically Descriptive

In maintaining the refusal, the examining attorney argues that the "primary significance of the term BAIKALSKAYA is geographic" because translated from Russian

---

[2] In her brief, the examining attorney did not address this requirement but merely stated that applicant "has acknowledged that its vodka is made from water from Lake Baikal." Br. p. 3. Presumably, the examining attorney considers applicant's silence as an acknowledgment. While it is expected that an applicant comply with requests for information, see In re DTI Partnership LLP, 67 USPQ2d 1699 (TTAB 2003), in this case, it appears that the nature of the requirement was to confirm what the record already showed.

this term means "from Baikal" (Br. p. 4) and BAIKAL is the name of a lake in Russia (Br. p. 5). Further, the examining attorney argues that a goods/place association is presumed because applicant is located in Irkutsk, a city near Lake Baikal, and its vodka "is manufactured and bottled with water piped directly from Lake Baikal." Br. p. 5. She argues that Lake Baikal is not an obscure location but rather a well-known lake and popular tourist destination and BAIKALSKAYA would be perceived by the relevant purchasers, consumers of Russian vodka, as such. She further notes that the translation "from Baikal" will not be lost on the approximately 706,000 Russian speakers in the United States.

In support of her position the examining attorney submitted an excerpt from a Russian/English language dictionary and a memorandum from the translations office of the Patent and Trademark Office showing the English translation of BAIKALSKAYA as "from Baikal" or "Baikal's." She also submitted the following entries from *The American Heritage Dictionary of the English Language* (3d ed. 1992):

> Baikal, Lake: A lake of south-central Russia.
> It is the largest freshwater lake in Eurasia and
> the world's deepest lake, with a maximum depth of
> 1,742.2m (5,712 ft).
>
> Irkutsk: A city of south-central Russia near the
> southern end of Lake Baikal. It is an industrial

center and a major stop on the Trans-Siberian
Railroad.  Population, 598,000.

In addition, she submitted printouts of excerpts from
a variety of publications retrieved from the Lexis/Nexis
database that refer to Lake Baikal.[3]  A few examples are set
forth below.

> Here are three tour companies with itineraries
> that visit Lake Baikal and the annual Naadam
> Festival in Ulan Bator, Mongolia, where nomads
> gather each summer to participate in archery,
> wrestling and horse-racing competitions.  *The
> Washington Post* (May 9, 2004).

> How they spent last summer:  Paddling 1,300 miles
> around Lake Baikal in Siberia...Why Lake Baikal?
> It's the deepest lake in the world, at 5,600
> feet, and so huge it contains one fifth of the
> world's unfrozen fresh surface water, as much as
> all the Great Lakes combined.  It's also
> biologically diverse, with 1,500 species of
> living things that are only found in the lake,
> including a fresh-water seal called the Nerpa.
> *The Bellingham Herald* (Bellingham, Washington
> April 19, 2004).

> "From the environmental perspective, it's not a
> good thing," said Ellen Pikitch, a University of
> Miami professor and director of the Pew Institute

---

[3] The examining attorney also submitted printouts of excerpts
from articles retrieved from the Lexis/Nexis database based on a
search of the terms BAIKAL and VODKA appearing together.  All but
one of these excerpts merely refer to drinking vodka in the
environs of Baikal.  See, e.g., *The Seattle Times* (July 7, 1991)
("...friends and parents had gathered at an overlook on the
Baikal shore...the best man began distributing shots of vodka.")
The remaining excerpt is from the London edition of the Financial
Times.  Although this is a well known publication, there is
nothing in the record to show that the London edition has been
distributed in the United States.  See In re Men's International
Professional Tennis Council, 1 USPQ2d 1917 (TTAB 1986).  In view
thereof, we have not considered these excerpts as evidence of a
goods/place association between vodka and Lake Baikal.

for Ocean Science. "This is a nonnative species that's being farmed. It's a Siberian sturgeon that occurs in the wild in Lake Baikal and other parts of Russia." *The Washington Post* (April 15, 2004).

The Oak Ridge High School junior hopes to use it this summer when she and 11 other El Dorado County students visit one of the world's natural treasures – Lake Baikal in Siberia...Petkova and her peers from Union Mine and Golden Sierra high schools plan to help citizens establish a watershed-monitoring program at Lake Baikal, the largest freshwater lake in the world. The lake, which is nearly 400 miles long, is facing environmental degradation from heavy industry and air pollution...Last fall, 10 Russian students from Lake Baikal visited the United States to attend the Watershed Education Summit...The trip will provide students with an opportunity to apply their scientific knowledge to a real situation, said Bob Harris, who serves on the Tahoe-Baikal Institute board of directors... *Sacramento Bee* (March 28, 2004).

Voyles grew up in Irkutsk, a small town that sits on the Siberian shores of Lake Baikal, famous as the deepest lake in the world. *The Atlanta Journal-Constitution* (January 7, 2004).

Dr. Davies was said by friends and colleagues to have brought about vast improvements in water quality – from the Chesapeake Bay to Russia's Lake Baikal – with a work ethic that emphasized hard science and a spirit of gentlemanly collaboration. *The Washington Post* (December 3, 2003).

Alexey Chunchaev, 15, is from Angarsk, Siberia, on the shores of 375-mile-long Lake Baikal, the world's largest body of freshwater. *The Pantagraph* (Bloomington, IL November 2, 2003).

It's now claimed Lake Baikal holds 20 percent of the earth's liquid fresh water. *Monterey County Herald* (October 26, 2003).

...At Port Baikal, we're back into traditional tour mode...Lake Baikal is followed by a busy day running around Irkutsk, the nearby capital of Eastern Siberia...*The Record* (Bergen County, NJ, August 20, 2000).

In addition to large oil and gas investments on Sakhalin --$5 billion from Japan already – the other product of this new economic marriage could be a 2,500-mile, $10 billion pipeline from oil deposits west of Lake Baikal to this modern port, the freight terminus for the Trans-Siberian Railway. *The New York Times* (June 30, 2004).

Russia, China, and Japan are competing over major deposits of oil and natural gas recently discovered in the Lake Baikal region. No one knows yet just how large these Siberian deposits are... Baikal Watch recognizes that there is a greater responsibility in helping local groups fight against these pipelines as well. Now more than ever, it is critical to present alternatives that will improve the economic situation in this region. The preservation of the parks around Lake Baikal–not to mention the preservation of Baikal itself as an intact ecosystem of global importance—is the key to the future well-being of the region. For this reason, Baikal Watch continues to arrange ecotours to the Baikal area. In addition, Baikal Watch is helping local groups build The Great Baikal Trail... *Earth Island Journal* (June 22, 2004).

The proposed pipeline would tap gas from fields near Lake Baikal in eastern Siberia and skirt Mongolia, running via Harbin in northeastern China to South Korea via the Yellow Sea, bypassing North Korea. *Pipeline & Gas Journal* (December 1, 2003).

Currently, the U.S. and Russian governments are implementing programs in such areas as the conservation of the habitat of the endangered Amur tiger and promoting ecotourism and watershed management near Lake Baikal. *State Department, Federal Information and News Dispatch, Inc.* (April 22, 2004).

The examining attorney also made of record content from three websites on the Internet featuring travel tours to Lake Baikal. See, excerpts from www.tripadvisor.com, baikal.in-russia.com and www.waytorussia.net attached to Final Office Action (December 22, 2004).

Finally, regarding the number of people familiar with the Russian language in the United States, the examining attorney submitted printouts from several publications retrieved from the Lexis/Nexis database, as well as an excerpt from the CNN website, showing that there are approximately 706,000 Russian speakers in the United States. See www.cnn.com/2003.

In traversing the refusal, applicant first notes that it is the owner of a prior registration for BAIKALSKAYA vodka which was cancelled under Section 8 due to its failure to file a statement of continued use in view of its cessation of sales in the United States. Applicant argues that "The previous registration indicates that this mark is capable of functioning as an effective indicator of source for the Applicant." Br. p. 2. Continuing, applicant argues that Lake Baikal is remote and that the "vast majority of Americans are unlikely to be familiar with Russian geography in general and Lake Baikal in

particular." Br. p. 4. Further, that only a very small portion of Americans visit Russia each year and that it "is common knowledge that the American public as a whole lacks even general geographic knowledge, ranking near the bottom of nearly all surveys of geographic knowledge among industrialized nations. Many Americans could not find the Atlantic Ocean on a globe and very few could name the five Great Lakes located in the United States." Br. p. 5. Applicant does not dispute the number of Russian speakers in the United States but argues that it is a very small percentage of the general population and that very few Americans visit "the remote location of Lake Baikal in Siberia." Br. p. 4. Applicant further argues that "the average American consumer does not speak or understand Russian, and thus would be highly unlikely to understand the meaning of the expression 'BAIKALSKAYA'." Br. p. 4.

The test for determining whether a term is primarily geographically descriptive is whether (1) the term in the mark sought to be registered is the name of a place known generally to the public, and (2) the public would make a goods/place association, that is, believe that the goods or services for which the mark is sought to be registered originate in that place. See In re Societe Generale des Eaux Minerals de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450

8

(Fed. Cir. 1987) (hereinafter Vittel); In re JT Tobacconists, 59 USPQ2d 1080 (TTAB 2001); University Book Store v. University of Wisconsin Board of Regents, 33 USPQ2d 1385 (TTAB 1994); and In re California Pizza Kitchen, Inc., 10 USPQ2d 1704 (TTAB 1988). If the goods do in fact emanate from the place named in the mark, the goods/place association can be presumed. In re Carolina Apparel, 48 USPQ2d 1542 (TTAB 1998). One exception to that presumption is "if there exists a genuine issue raised that the place named in the mark is so obscure or remote that purchasers would fail to recognize the term as indicating the geographical source of the goods." Vittel, supra at 1451. In that situation, the examining attorney must submit evidence sufficient to establish a public association with that place. Id. The determination of the goods/place association is made not in the abstract, but rather in connection with the goods or services with which the mark is used and from the perspective of the relevant public for those goods or services. See In re MCO Properties Inc., 38 USPQ2d 1154 (TTAB 1995) (FOUNTAIN HILLS geographically descriptive where relevant public for applicant's service of developing real estate includes people considering purchasing real property in Fountain Hills, Arizona). Finally, adjectival forms of geographic

9

terms are also considered primarily geographically descriptive.  In re Jack's Hi-Grade Foods, Inc., 226 USPQ 1028, 1029 (TTAB 1985) (NEAPOLITAN for sausage emanating from United States primarily geographically deceptively misdescriptive); Ex Parte La Union Agricola Sociedad Anonima, 73 USPQ 233 (ComrPats 1947) (La Tarragonesa adjectival form of Tarragona indicating something from Tarragona geographically descriptive of brandy from Tarragona).

We first look at the significance of the term to the relevant public, who are consumers of vodka, including Russian vodka.  As shown by the evidence, Lake Baikal is located in south-central Russia and is noted for its size, depth, volume of water and unique indigenous species.  As indicated in the 1992 dictionary entry submitted by the examining attorney, Baikal is the world's deepest lake, and is located in Russia.  The lake is the subject of numerous articles in U.S. publications on subjects ranging from tourism to ecology to oil production.

Baikal has been the subject of scientific and environmental/cultural exchanges between American and Russian citizens.  See *The Washington Post* (December 3, 2003); *Sacramento Bee* (March 28, 2004); *State Department, Federal Information and News Dispatch, Inc.* (April 22,

10

2004); and *Earth Island Journal* (June 22, 2004). Baikal and the surrounding region receive frequent mention in the United States press due to its attraction as a tourist destination and an energy pipeline project that is reported to be a threat to its natural beauty. See *The Bellingham Herald* (Bellingham, Washington April 19, 2004); *The Record* (Bergen County, New Jersey January 18, 2004); *The New York Times* (June 30, 2004); and *The Washington Post* (April 5, 2004). We particularly note that the examples submitted by the examining attorney span the United States and include publications in Sacramento, California; Atlanta, Georgia; Bergen County, New Jersey and Bellingham, Washington. In addition, the examples include national publications with wide distribution such as the Washington Post and the New York Times.

The fact that BAIKALSKAYA is the adjectival form of a geographic term does not diminish its geographic significance. In re Jack's Hi-Grade Food, Inc., supra. There is no question that Russian speakers living in the United States, according to the record approximately 706,000 in number, would immediately know that BAIKALSKAYA means "from Baikal." Thus, the evidence of record supports a finding that a significant portion of consumers would, upon seeing the word BAIKALSKAYA on a bottle of vodka,

11

conclude that it is a place name and that the vodka came from there.  Nor is there any evidence in the record to show an alternative primary meaning in the public mind. Applicant has not contended and the record does not reflect that the words BAIKAL and BAIKALSKAYA have any other meaning.  On this record, we find that BAIKAL is not a remote or obscure place and its adjectival form retains its geographic significance.

We are not persuaded by applicant's argument that Americans have limited knowledge of world geography and that they "could not find the Atlantic Ocean on a globe." Aside from the fact that applicant submitted no evidence to support this statement, we are not concerned with "the American public as a whole."  Rather, as noted above, we must determine the perception of a subset of Americans, purchasers of vodka, including Russian vodka.  Moreover, the record shows that the public at large is exposed to references to Lake Baikal and certainly the Russian-speaking public is even more likely to be aware of the geographic significance of the mark because they are most likely either from Russia, have Russian relatives, or became familiar with Russia, including major geographic sites, when learning the language.

12

The facts of this case are distinguished from the cases relied on by applicant in support of its contention that its mark is not geographically descriptive. The cases of Vittel, supra, In re Bavaria St. Pauli Brauerei AG, 222 USPQ 926 (TTAB 1984), and In re Brauerei Aying Franz Inselkammer KG, 217 USPQ 73 (TTAB 1983), all involved the names of small villages which were not widely known, in contrast to the name of a significant lake, the deepest lake in the world. Moreover, the evidentiary record here, as opposed to the prior cases, is replete with numerous references to BAIKAL in various publications from various cities throughout the United States in addition to dictionary entries. We recognize that for an American consumer BAIKAL is not in the same category as MINNESOTA. Compare In re JT Tobacconists, supra (no question that Minnesota is not obscure or remote). However, to the extent applicant has raised an issue as to the possible remoteness or obscurity of the place, the examining attorney has submitted sufficient evidence from which we can infer that a significant portion of American vodka purchasers would conclude that BAIKALSKAYA refers to a place name. Compare Vittel, supra.

Turning to the second prong in the test, we presume a goods/place association because applicant is located near

13

Lake Baikal, in the city of Irkutsk.  See In re Carolina

Apparel, supra.  In addition, applicant has acknowledged

that its vodka is made in Irkutsk.  Moreover, applicant

does not dispute the examining attorney's contention that

its vodka is made from the water of Lake Baikal, or that it

produces various vodkas from a location near Lake Baikal.

In this connection, we note it has been reported that

applicant plans to make its BAIKALSKAYA vodka from the

water from Lake Baikal:

> New production facilities built at the Kedr
> Distillery in Irkutsk, Siberia...At present Kedr
> accounts for half of the 1.8 million decaliters
> of vodka exported to the U.S.  Kedr also plans to
> start the production of new vodka, Baikalskaya,
> which is made of water from lake Baikal, the best
> grades of wheat and cedar nuts.  RusData DiaLine-
> BizEkon News (June 10, 1993).

It has also been reported that Irkutsk is one of the

main export regions of Russian vodka and liquor, and

that applicant is one of the biggest producers in the

Irkutsk region:

> On the whole, Russian vodka and liquor exports
> amounted to 1,472,665 decaliters in the reported
> period.  Among the main exporters were the
> Kaliningrad, Irkustsk, Magadan, Novgorod and Omsk
> regions.  RosBusinessConsulting Database
> (September 13, 2002); and
>
> The company Kedr, one of the Irkutsk region's
> largest producers of liquors and vodka...  Food &
> Agriculture Report (May 15, 2002).

In view of the above, we conclude that the proposed mark BAIKALSKAYA for use in connection with applicant's vodka is primarily geographically descriptive.

Finally, applicant's prior cancelled registration does not obviate the refusal. A cancelled registration is not entitled to any of the statutory presumptions of Section 7(b) of the Trademark Act. See, e.g., In re Hunter Publishing Company, 204 USPQ 957, 963 (TTAB 1979) (cancellation "destroys the Section [7(b)] presumptions and makes the question of registrability 'a new ball game' which must be predicated on current thought."). Cf. Action Temporary Services Inc. v. Labor Force Inc., 870 F.2d 1563, 10 USPQ2d 1307, 1309 (Fed. Cir. 1989) ("[A] canceled registration does not provide constructive notice of anything"). Moreover, prior decisions by examining attorneys are not binding on the Board. In re Nett Designs Inc., 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001).

With regard to the refusal under Section 2(e)(1) based on mere descriptiveness, the essence of the examining attorney's argument is that, just as the geographic origin of applicant's vodka is Lake Baikal, the geographic origin of one of the ingredients of the vodka is also Lake Baikal. We view this position as simply another argument that BAIKALSKAYA is primarily geographically descriptive.

15

Showing that BAIKALSKAYA describes the geographic origin of an ingredient of the goods is not sufficient to make out a separate basis for refusal under Section 2(e)(1). Accordingly, the refusal under Section 2(e)(1) is reversed. See In re BankAmerica Corp., 231 USPQ 873 (TTAB 1986) (phrase BANK OF AMERICA primarily geographically descriptive of computerized financial data processing services but not merely descriptive of such services).

**Decision**:  The refusal to register under Section 2(e)(2) of the Trademark Act is affirmed; the refusal to register under Section 2(e)(1) is reversed.