THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
May 2, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*In re Hollywood Lawyers Online*
_____

Serial No. 85662420
_____

Suzanne R. Natbony[1] for Hollywood Lawyers Online.

Carolyn P. Cataldo, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).

_____

Before Kuhlke, Lykos and Adlin, Administrative Trademark Judges.

Opinion by Kuhlke, Administrative Trademark Judge:

Applicant, Hollywood Lawyers Online, located in Los Angeles, California, filed an application to register on the Principal Register HOLLYWOOD LAWYERS ONLINE in standard characters for services identified as "attorney referrals; providing a web site featuring business information in the form of audio and video interviews, transcripts and other educational materials; providing an online video business directory," in International Class 35.[2]

_____

[1] Ms. Natbony is applicant's General Counsel. See Notice of Appeal (July 25, 2013).

[2] Application Serial No. 85662420, filed on June 26, 2012, based on an intent to use the mark in commerce under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b).

Registration has been refused under Section 2(e)(2) of the Trademark Act, 15 U.S.C. § 1052(e), on the ground that applicant's mark is primarily geographically descriptive of its services.

The refusal was made final, applicant appealed and briefs have been filed.

The test for determining whether a term is primarily geographically descriptive is whether (1) the primary significance of the term in the mark sought to be registered is the name of a place generally known to the public, and (2) the public would make an association between the goods or services and the place named in the mark (a "goods or services/place association"), that is, believe that the goods or services for which the mark is sought to be registered originate in that place. *See In re Societe Generale des Eaux Minerals de Vittel S.A.*, 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987); *In re JT Tobacconists*, 59 USPQ2d 1080 (TTAB 2001); *University Book Store v. University of Wisconsin Board of Regents*, 33 USPQ2d 1385 (TTAB 1994); and *In re California Pizza Kitchen, Inc.*, 10 USPQ2d 1704 (TTAB 1988). If the goods or services do in fact emanate from the place named in the mark, the goods or services/place association can be presumed. *In re Carolina Apparel*, 48 USPQ2d 1542 (TTAB 1998). Finally, "the presence of generic or highly descriptive terms in a mark which also contains a primarily geographically descriptive term does not serve to detract from the primary geographical significance of the mark as a whole." *JT Tobacconists*, 59 USPQ2d at 1082 (MINNESOTA CIGAR COMPANY primarily geographically descriptive of cigars from Minnesota).

The examining attorney argues that the additional wording LAWYERS ONLINE is highly descriptive of applicant's services which include providing "online attorney, or lawyer, referrals."[3] Further, the examining attorney asserts that because applicant is located in Los Angeles and Hollywood is a district of Los Angeles, there is a services/place association.

In support of her position, the examining attorney submitted the following evidence:

Online Encyclopedia Excerpt[4]

"Hollywood is a district in Los Angeles, California United States … Due to its fame and cultural identity as the historical center of movie studios and movie stars, the word Hollywood is often used as a metonym of American cinema. …" (www.wikipedia.org);

Dictionary Definitions[5]

Hollywood 1. A district of Los Angeles, California … Consolidated with Los Angeles in 1910, it has long been a film and entertainment center. 2. A city of southeast Florida on the Atlantic Ocean north of Miami Beach. It is a resort and retirement community with varied light industries. Population: 143,000. (http://education.yahoo.com);

Hollywood 1. A district of Los Angeles long associated with the American film industry. 2. the film industry of the United States 3. a flashy vulgar tone or atmosphere believed to be characteristic of the American film industry. (http://www.vocabulary.com/dictionary);

Hollywood 1. The NW part of Los Angeles, Calif.: center of the American motion-picture industry. 2. A city in SE Florida, near Miami: seaside resort. (http://dictionary.reference.com based on *Random House Dictionary* (2013));

---

[3] First Office Action (October 15, 2012) p. 1.

[4] *Id.*

[5] Final Office action (February 21, 2013).

Hollywood 1. A NW suburb of Los Angeles, California: centre of the American film industry. Pop: 167,664 (2000) 2. a. the American film industry b. (as modifier): a Hollywood star. (http://dictionary.reference.com based on *Collins World English Dictionary* (10th ed. 2009));

Hollywood, District of Los Angeles, note: Center of the American film industry (http://dictionary.reference.com based on *The American Heritage New Dictionary of Cultural Literacy* (3d ed. 2005));

Hollywood 1. having phony glitter 2. A gaudily dressed person in sunglasses. (http://dictionary.reference.com based on *Dictionary of American Slang and Colloquial Expressions* (2007));

Hollywood a section of Los Angeles that is often considered to be the center of the U.S. film industry or to represent the industry's values, lifestyle, or the like. (http://www.wordsmyth.net);

Hollywood 1. A district of Los Angeles, California. Consolidated with Los Angeles in 1910, it has long been a film and entertainment center. 2. A City of southeast Florida on the Atlantic Ocean north of Miami Beach. It is a resort and retirement community with varied light industries. Hollywood n. 1. The U.S. film industry. 2. A flashy, vulgar atmosphere or tone, held to be associated with the U.S. film industry. Adj. 1. Of or relating to the U.S. film industry. 2. Flashy and vulgar. (http://www.thefreedictionary.com based on *The American Heritage Dictionary of the English Language* (4th ed. 2000));

Excerpts from websites showing listings of lawyers serving North Hollywood, CA and West Hollywood, CA.[6]

"LegalMatch Can Find You Pre-Screened North Hollywood Lawyers Now … You can post your case for free on LegalMatch. Licensed lawyers in your local area review your case. When interested North Hollywood CA Lawyers respond to your case, we provide you full lawyer profiles that includes background information, fees, and ratings by other LegalMatch users so you can choose the right attorney for you." (http://www.legalmatch.com);

---

[6] *Id.*

"North Hollywood, California Bankruptcy Lawyers, Attorneys and Law Firms … Tell us more about your case so that we can show you lawyers that serve your area." (http://www.nolo.com);

"West Hollywood, California Attorneys and Law Firms by Area of Law … Find a West Hollywood attorney from the lawyer directory by area of law. After you've made your selection, you will be able to contact a West Hollywood, California lawyer or law firm in the area of law you've selected." (http://www.lawyers.com);

"West Hollywood, CA Premier Personal Injury Lawyers serving all Residents in West Hollywood, CA … We represent clients throughout the West Hollywood, CA are [sic] who have a wide variety of personal injuries, from minor to catastrophic. … Our dedicated West Hollywood, CA injury lawyers and legal staff members from the West Hollywood, CA area are attentive to your individual needs and understand the nature of your case." (http://www.legaldefenders.com);

"HG.org Global Legal Resources ... West Hollywood, California (CA) Lawyers, Law Firms" (http://www.hg.org);

"Primerus The World's Finest Law Firms … West Hollywood Personal Injury Defense Attorney" (http://www.primerus.com);

"FindLaw … North Hollywood Real Estate Lawyers, North Hollywood Real Estate Attorneys and Law Firms – California" (http://lawyers.findlaw.com);

Excerpts from websites offering various services[7]

Travel websites for Hollywood, California discussing it as a travel destination (http://travel.yahoo.com, http://www.latourist.com);

Real estate website listing real estate in the location "Hollywood, CA" enabling users to "[f]ind Hollywood, CA homes for sale and other Hollywood real estate on REALTOR.com." (http://www.realtor.com);

Search results for Hollywood California from a job search website (http://www.indeed.com);

Excerpt from applicant's website Hollywood Lawyers Online indicating it is under construction (http://hollywoodlawyersonline.com).

---

[7] *Id.*

In addition, the examining attorney submitted several third-party registrations with either the word "HOLLYWOOD" disclaimed or registered under Section 2(f) based on acquired distinctiveness on the Principal Register or registered on the Supplemental Register for a variety of goods and services. Many of these marks registered after issuance of *In re Taste International*, 53 USPQ2d 1604 (TTAB 2000), where the Board found that the USPTO had not established that the primary significance of the applied-for mark incorporating the term HOLLYWOOD was that of a geographic location. *See, e.g.*, Reg. No. 2484632, issued September 4, 2001, for HOLLYWOOD BED FRAME for box spring and mattress support frames, "BED FRAME" disclaimed, entire mark registered under Section 2(f) (registrant's address is in Commerce, CA); Reg. No. 2698901, issued on March 18, 2003 on the Supplemental Register, for the mark HOLLYWOOD SHOPPING NETWORK for online retail services featuring books, computer programs, music videos, to be shown on television, etc., "SHOPPING NETWORK" disclaimed (registrant's address is in Beverly Hills, CA); Reg. No. 3328097, issued on October 30, 2007 on the Supplemental Register, for the mark HOLLYOOD BALLET for dance events; dance instruction; dance schools, etc. "BALLET" disclaimed (registrant's address is in Castaic, CA); Reg. No. 3518637, issued on October 14, 2008 on the Supplemental Register, for the mark THE HOLLYWOOD COACH for education services, namely, providing live and online seminars, workshops, classes and tutorials in the field of acting, writing, directing, producing and career development for actors, writers, directors, etc., "COACH" disclaimed (registrant's address is in Beverly Hills).[8]

---

[8] *Id.*

Applicant argues that under the first prong of the test its mark is not primarily geographically descriptive, asserting that "the applicable consumer base would [not] recognize the mark to denote a geographical place"; rather "the average consumer of online legal services would associate 'Hollywood' in HLO [Hollywood Lawyers Online] with the entertainment aspect of the word."[9] Further, applicant argues that:

> [A] consumer who accesses a website in search of online legal information would understand that the provided services were national in character, and that the 'Hollywood' aspect of the experience was presentation-based … [and] a typical consumer of online legal information would understand the phrase 'Hollywood Lawyers,' when juxtaposed with the nebulous word 'Online,' indicates, in its totality, a service that is at least national, if not global, in character. … the clearly national-aspect of the platform helps instruct the user which meaning applies. In the present case, the strictly online platform, coupled with the national subject matter, informs the 'bulk of the purchasers' that the Hollywood aspect of the mark is clearly entertainment-based.[10]

Applicant particularly relies on *Taste International*, 53 USPQ2d 1604, noted above, in which the Board found that the mark shown below was not primarily geographically descriptive for French fries and restaurant services in view of the non-geographic meaning of the word HOLLYWOOD and the star design that emphasized the non-geographic meaning.

---

[9] App. Br. p. 9.

[10] *Id.*



Specifically, the Board stated:

There is no question that "Hollywood" is a section of Los Angeles, California (as well as being a town in Florida). However, in view of the other prominent, significant meaning of the term "Hollywood" as referring to the entertainment industry in general, we find that the Examining Attorney has not established that the *primary* significance of the term "Hollywood' is that of a geographic location in California. That is, the record does not establish that to the purchasing public the primary connotation of the term "Hollywood" is the particular California town and not the general entertainment industry. Moreover, the star design feature which forms part of applicant's mark increases the commercial impression of the term as connoting the entertainment industry and decreases the connection to the town of Hollywood, California.

*Id*. at 1605 (emphasis in original).

In support of its position, applicant submitted the following evidence:

Dictionary Definition[11]

Hollywood 1. Having phony glitter; 2. A gaudily dressed person in sunglasses. *Dictionary of American Slang and Colloquial Expressions* (2000);

Online Encyclopedia[12]

Hollywood (disambiguation) Hollywood is a district in Los Angeles, United States, often referred to as the center of the U.S. film industry. Hollywood may also refer to: [list of over 50 different Wikipedia articles for Hollywood, including other places, people, music, movies, etc.] www.wikipedia.org;

---

[11] App. Response (December 18, 2012), Exh. 1.

[12] *Id.*, Exh. 2.

Online Directory[13]

>Results from a search in the online white pages showing addresses around the United States for various businesses that include Hollywood in their name, e.g., Hollywood Video (Washington DC), Planet Hollywood (Washington DC), Hollywood Smile (Columbus, OH), Hollywood Casino (Columbus, OH), Hollywood Nails (Miami, FL), Hollywood Tans (Atlanta, GA) (www.whitepages.com).

Applicant also attached evidence to its brief entitled "Excerpts of HLO Business Plan." This printout was not submitted during prosecution and the examining attorney did not address it in her response brief. The evidentiary record in an application should be complete prior to the filing of an ex parte appeal to the Board. Trademark Rule 2.142(d). *Compare In re Trans Continental Records Inc.*, 62 USPQ2d 1541, 1541 n.2 (TTAB 2002) (materials from web search engines submitted with appeal brief not considered) *with In re Homeland Vinyl Products Inc.*, 81 USPQ2d 1378, 1381 n.5 (TTAB 2006) (declarations submitted for first time with applicant's appeal brief treated of record because examining attorney did not object *and* addressed the evidence on the merits). In view thereof, we have not considered these materials.[14]

We find the facts of this case to be different from *Taste International*. Unlike the star design in HOLLYWOOD FRIES, the other element in applicant's mark, i.e., the wording LAWYERS ONLINE, does not "increase[ ] the commercial impression

---

[13] *Id.*, Exhs. 3-6.

[14] We note that these materials would not change the result herein. We are concerned with the mark as it appears in the drawing page and the applied-for services, and not how applicant's services will be "presented," see app. br. pp. 6, 9, as a registration for the mark would cover any manner of "presentation."

of the term as connoting the entertainment industry." *Taste International*, 53 USPQ2d at 1605. In fact, we find quite the opposite; that the additional wording LAWYERS ONLINE immediately describes the applied-for services, i.e., attorney referrals provided online, and does not allude to the entertainment industry.

Geographic descriptiveness, like descriptiveness generally, "must be evaluated in relation to the particular goods for which registration is sought, the context in which it is being used, and the possible significance that the term would have to the average purchaser of the goods because of the manner of its use or intended use." *In re Chamber of Commerce of the U.S.A.*, 675 F.3d 1297, 102 USPQ2d 1217, 1219 (Fed. Cir. 2012) (citation omitted); *see also In re Loew's Theatres, Inc.*, 769 F.2d 764, 226 USPQ 865, 867 (Fed. Cir. 1985) (geographic descriptiveness or misdescriptiveness "must be determined as 'applied to the goods of the applicant'") (citations omitted); *In re Premiere Distillery, LLC,* 103 USPQ2d 1483, 1484 (TTAB 2012) (REAL RUSSIAN primarily geographically deceptively misdescriptive under Section 2(e)(3) for vodka not sourced from Russia); *In re Jonathan Drew Inc.*, 97 USPQ2d 1640, 1643 (TTAB 2011) (KUBA KUBA primarily geographically deceptively misdescriptive for cigars not from Cuba). The services in this case are quite different from the restaurant services in *Taste International*. When confronted with the phrase HOLLYWOOD LAWYERS ONLINE for attorney referral services, a web site featuring business information in the form of audio and video interviews, or online business directories, the immediate perception is an online database of Hollywood-based attorneys and businesses and websites

10

featuring information about such businesses. The record includes examples of websites directed to the availability of lawyers in the Hollywood district of Los Angeles showing that potential consumers of legal or business services are exposed to use of that term in a geographic manner in connection with these types of services. As the examining attorney explains:

> The internet evidence of record shows that it is common practice for lawyers to be advertised and identified on the internet by the geographic location of Hollywood, CA thus it is more likely that relevant purchasers of applicant's services are looking for lawyers who are located in Hollywood, are not viewing applicant's online legal information services as being Hollywood, or flashy, in nature. Rather, it is more likely that these consumers are searching for lawyers and information relating to law in the geographic location of Hollywood, CA and are viewing Hollywood in the geographic sense of the term. The examining attorney previously made of record a screenshot from applicant's website, showing that the subject matter of applicant's services covers more than just the entertainment industry, which increases the likelihood of consumers associating applicant's mark with the California district rather than just the entertainment industry.[15]

Contrary to applicant's contention, the term ONLINE does not necessarily connote a national scope of services. It has become very common for a business to have an online presence even if the services provided are local rather than national in scope. The term ONLINE simply signals that the services are offered online or may be researched online. Moreover, to the extent applicant's services would be national in scope this would not obviate the refusal. There is "no inherent reason why a service mark, when used for services rendered outside the named geographical area, would not be primarily geographically descriptive within the meaning of Section 2(e)(2)… ." *In re California Pizza Kitchen Inc.*, 10 USPQ2d

---

[15] Ex. Att. Br. p. 8.

11

1704, 1706 (TTAB 1988). Even if the services are rendered to an out-of-state consumer through the internet and provide the consumer with information relevant to out-of-state or national issues (for example, referral to an out-of-state attorney or a video on federal tax law), that consumer would understand the mark to indicate that the services originate in the Hollywood district and it would not erase the fact that such services are also rendered to Hollywood consumers and provide relevant information specific to Hollywood (for example, referral to Hollywood area attorneys). *Id.* ("It is the perception of the public as to the geographical significance of the mark which controls whether registration would be refused pursuant to Section 2(e)(2), not whether an applicant also renders the service or manufactures some of the goods outside of the geographical area named in the mark.").

While the word HOLLYWOOD may have different connotations depending on context, here in the context of applicant's applied for services, namely, "attorney referrals; providing a web site featuring business information in the form of audio and video interviews, transcripts and other educational materials; providing an online video business directory" and without additional elements in the mark to detract from the geographic significance, there is no allusion to the alternative meaning referencing the "glamour" of the film industry. *See In re Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986). As noted by the examining attorney, "nothing in the evidence of record demonstrates that relevant consumers would view applicant's mark or services as being in the Hollywood motion picture sense rather than as denoting a geographic connection because of the common practice of lawyers located

12

[in or near Hollywood, California] to advertise online, as shown by the evidence of record."[16]

While it is possible that HOLLYWOOD could have a merely descriptive significance under Section 2(e)(1), based on the alternative definition "of, or relating to the American film industry,"[17] in that it could describe a significant feature of the services, such as a focus on the legal and business issues in the film or entertainment industry or applicant's "presentation" style, such meanings would not assist applicant. Indeed, this possible reference is so "closely connected to the [district of Hollywood]" such that it does not "obviate that term's primary geographical sense." *Opryland USA Inc.*, 1 USPQ2d at 1413. *See The American Heritage Dictionary of the English Language*, supra ("A district of Los Angeles California. Consolidated with Los Angeles in 1910 it has long been a film and entertainment center."). Moreover, to the extent HOLLYWOOD serves to modify LAWYERS, it is well-established that adjectival forms of geographic terms are also considered primarily geographically descriptive. *In re Joint-Stock Co. "Baik,"* 80 USPQ2d 1305 (TTAB 2006). Thus, we find the appropriate refusal in this case to be that the proposed mark is primarily geographically descriptive.[18]

Having determined that in the context of these services the primary significance of the word HOLLYWOOD is geographic and the additional elements in

---

[16] Ex. Att. Br. p. 9.

[17] *The American Heritage Dictionary of the English Language*, supra.

[18] We note that if the meaning is not primarily geographically descriptive, but rather merely descriptive, the application would still be subject to refusal under a different Section of the Trademark Act, Section 2(e)(1), 15 U.S.C. § 1052(e)(1).

the mark LAWYERS ONLINE do not elicit other meanings, we turn to the next prong, whether there is an association between the services and the place named in the mark.

As noted above, applicant's address is in Los Angeles and Hollywood is a district of Los Angeles. When goods are produced or services are provided near the geographic place named in the applied-for mark it may be sufficient to support a finding that the services originate in that geographic location. *See In re Spirits of New Merced*, LLC, 85 USPQ2d 114, 1621 (TTAB 2007) (YOSEMITE BEER primarily geographically descriptive of beer produced and sold in Merced, California, a city located 80 miles from Yosemite National Park, where the goods originated in an area associated with and "located near YOSEMITE"); *In re MCO Properties Inc.*, 38 USPQ2d 1154 (TTAB 1995) (FOUNTAIN HILLS primarily geographically descriptive of real estate development services rendered in Fountain Hills, Arizona). *See also Warwood v. Hubbard*, 228 USPQ 702, 701-03 (Mont. 1985) (holding YELLOWSTONE OUTFITTERS primarily geographically descriptive of outfitting service offered "near Yellowstone Park"). Thus, the fact that applicant's Los Angeles address is not directly in or adjacent to Hollywood does not obviate the association. In addition, applicant's argument that it is incorporated in the state of Delaware is of no probative value. It is common knowledge that many companies may be incorporated in Delaware for legal or tax purposes but have their corporate offices in different states, and consumers are not generally aware of the place of incorporation.

14

Further, the record evidence, which includes multiple dictionary definitions, tourism websites, and real estate websites, demonstrates that Hollywood, far from being obscure or remote, is a well-known geographic location.

Applicant argues that:

> [T]he services are offered exclusively online, and thus 'originate' wherever one may receive internet access. The offered services are the entertaining informational videos featured on the website itself – the website does not direct users to an HLO [Hollywood Lawyers Online] storefront. Delivery of the goods and services offered by HLO is accomplished in the same way as all of HLO's services; via the internet.[19]

However, as discussed above, the evidence of legal services and listings for the Hollywood area offered online shows that consumers are accustomed to obtaining attorney referrals and business directories online but at the same time understanding those services to pertain in some way to a particular geographic area. *See MCO Properties Inc.*, 38 USPQ2d at 1156 (the services/place association "is determined not in the abstract but rather in connection with the services with which the mark is used, and from the perspective of the relevant public for those services."). In view thereof, the services/place association is established.

Applicant notes that "attorney referral services" are not its primary service and that it "does not provide attorney referral services of attorneys located in Hollywood, nor does it provide attorney referral services specific to consumers who reside in Hollywood. Its 'attorney referral services' will be generalized to the entire

---

[19] App. Br. pp. 10-11.

nation, providing service to attorneys and consumers located anywhere with an internet connection."[20]

The perception we are concerned with is that of the average consumer and the record establishes that upon seeing the wording HOLLYWOOD LAWYERS ONLINE, consumers would associate the legal *and* business services with the district of HOLLYWOOD. The fact that applicant may not specifically refer Hollywood-based attorneys or cater to consumers who reside in Hollywood does not eliminate the fact that applicant itself is located near the district of Hollywood. To the extent such facts would establish a different geographic location of the services, that could simply indicate that the mark is primarily deceptively geographically misdescriptive and potentially barred under Section 2(e)(3).

Finally, in its reply brief, applicant requests that, if the Board finds the mark to be primarily geographically descriptive, the application be amended by deleting the language "attorney referrals" from the identification of services.[21] The request is denied. If applicant had wanted to have the amendment to the identification considered in the alternative, it should have made that request during examination. To the extent applicant seeks to request remand for such consideration by the examining attorney, burying this request in its reply brief is not sufficient for the Board to treat it as a request for remand. Moreover, the request is substantively insufficient. Remand in an *ex parte* appeal is a matter of discretion with the Board, and the Board may refuse the request if it is filed six months after the date of the

---

[20] Reply Br. p. 4.

[21] Reply Br. p. 8.

16

action from which the appeal was taken, or if it would serve no useful purpose. Trademark Trial and Appeal Board Manual of Procedure (TBMP) § 1205.01 (3d ed. rev.2 2013) and cases cited therein. Remand requests are granted upon a showing of good cause. *Id*. Whether good cause will be found will depend, in part, on the stage of the appeal at the time the proposed amendment is filed, including the reason given for the delay. Here, applicant gave no reason as to why it did not offer this amendment during prosecution, when it filed its appeal, or even when it filed its main brief. In addition, the proposed amendment would not obviate the refusal in that it would not eliminate the remaining services which also have a services/place association. The services of "providing an online video business directory" equally imply a geographic location as attorney referral services. In addition, "a web site featuring business information in the form of audio and video interviews, transcripts and other educational materials" encompasses information about doing business in the district of Hollywood.

**Decision**: The refusal to register applicant's mark as geographically descriptive is affirmed.