Mailed:

THIS DISPOSITION IS
CITABLE AS PRECEDENT
OF THE TTAB

August 2, 2006
GDH/gdh

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re Brouwerij Nacional Balashi NV
————————

Serial No. 78304942
Serial No. 78304953
————————

Leslie J. Lott and Janet C. Moreira of Lott & Friedland, P.A. for Brouwerij Nacional Balashi NV.

Kathleen M. Vanston, Trademark Examining Attorney, Law Office 103 (Michael Hamilton, Managing Attorney).
————————

Before Quinn, Hohein and Drost, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:

Brouwerij Nacional Balashi NV, a corporation of Aruba located in the Balashi neighborhood of the Santa Cruz District of Aruba, has filed applications to register, in standard character form on the Principal Register, the marks "BALASHI BEER"[1] and "BALASHI"[2] for, in each instance, "beer" in International Class 32.

Registration in each case has been finally refused under Section 2(e)(2) of the Trademark Act, 15 U.S.C.

———————————

[1] Ser. No. 78304942, filed on September 24, 2003, which is based on an allegation of a bona fide intention to use the mark in commerce. The word "BEER" is disclaimed.

[2] Ser. No. 78304953, filed on September 24, 2003, which is based on an allegation of a bona fide intention to use the mark in commerce.

§1052(e)(2), on the ground that, as applied to applicant's goods, the marks "BALASHI BEER" and "BALASHI" are primarily geographically descriptive of beer.

Applicant, in each instance, has appealed and, at applicant's request, the appeals have been consolidated inasmuch as the issues presented are essentially identical. Briefs have been filed, but an oral hearing was not requested. We reverse the refusal to register in each case.

As a general proposition, in order for registration of a mark to be properly refused on the ground that it is primarily geographically descriptive of an applicant's goods or services, it is necessary to establish (i) that the primary significance of the mark is that of the name of a place generally known to the public and (ii) that the public would make a goods/place or services/place association, that is, believe that the goods or services for which the mark is sought to be registered originate in that place. See, e.g., In re JT Tobacconists, 59 USPQ2d 1080, 1091-82 (TTAB 2001); University Book Store v. University of Wisconsin Board of Regents, 33 USPQ2d 1385, 1402 (TTAB 1994); and In re California Pizza Kitchen Inc., 10 USPQ2d 1704, 1705 (TTAB 1988), *citing* In re Societe Generale des Eaux Minerales de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450, 1452 (Fed. Cir. 1987). Provided that these conditions are met, and the goods or services come from the place named by or in the mark, the mark is primarily geographically descriptive.

Moreover, where there is no genuine issue that the geographical significance of a term is its primary significance,

2

and where the geographical place named by the term is neither obscure nor remote, a public association of the goods or services with the place may ordinarily be presumed from the fact that the applicant's goods or services come from the geographical place named by or in the mark.  See, e.g., In re JT Tobacconists, supra at 1082; In re Carolina Apparel, 48 USPQ2d 1542, 1543 (TTAB 1998); In re California Pizza Kitchen Inc., supra; and In re Handler Fenton Westerns, Inc., 214 USPQ 848, 850 (TTAB 1982).  In addition, the presence of generic or highly descriptive terms in a mark which also contains a primarily geographically descriptive term does not serve to detract from the primary geographical significance of the mark as a whole.  See, e.g., In re JT Tobacconists, supra at 1082; In re Carolina Apparel, supra; In re Cambridge Digital Systems, 1 USPQ2d 1659, 1662 (TTAB 1986); and In re BankAmerica Corp., 231 USPQ 873, 875 (TTAB 1986).

However, "if ... there exists a genuine issue raised that the placed named [by or] in the mark is so obscure or remote that purchasers would fail to recognize the term as indicating the geographical source of the goods [or services]," In re Societe Generale des Eaux Minerales de Vittel S.A., supra at 3 USPQ2d 1451, the Examining Attorney must furnish evidence sufficient to establish a public association of the goods or services with that place.  Id.  The determination of such a goods/place or services/place association is not made in the abstract, but rather in connection with the goods or services with which the mark is used and from the perspective of the relevant purchasing public for those goods or services.  See,

3

e.g., In re MCO Properties Inc., 38 USPQ2d 1154, 1156 (TTAB 1995). As our primary reviewing court noted in In re Societe Generale des Eaux Minerales de Vittel S.A., supra at 3 USPQ2d 1451, which involved an application to register the mark "VITTEL" and bottle design for, *inter alia*, cosmetic products and an evidentiary record "show[ing] that Vittel is the name of a town in northeastern France in the Department of Voges, in the Voges mountains, which, in about 1962, had a population of 5475, had cold mineral water springs, and was known as a watering place, spa and resort":

> In dealing with all of these questions of the public's response to word symbols, we are dealing with the supposed reactions of a segment of the American public, in this case the mill-run of cosmetics purchasers, not with the unusually well-traveled, the aficionados of European watering places, or with computer operators checking out the meaning of strange words on NEXIS.

Id. at 3 USPQ2d 1452.

The Examining Attorney argues in her brief that, as applicant has conceded, the term "Balashi" identifies a geographic location in Aruba. Citing certain websites containing tourism information about Aruba, she accurately observes that the record shows that, "[h]istorically, Balashi was the center of the gold mining and gold smelting industry in Aruba" and that, "[p]resently, Balashi is the site [of] a large desalination plant." From such facts, she contends that:

> Balashi is an area in Aruba that has historical significance because of its importance in the gold industry. It has present day significance, in part, because it is home to the world's second largest

4

> desalination plant.  It is clear that the
> term identifies a significant geographic
> location in Aruba.

Further, in response to applicant's argument that the primary significance of the term "Balashi" cannot be geographical because it identifies a small, insignificant neighborhood in Aruba which, except for applicant's brewery and the government operated desalination plant, is otherwise essentially devoid of any meaningful commercial activity, the Examining Attorney asserts that such argument "is not persuasive" for the reason that "[a] term can be considered geographic even when it does not suggest exact geographic boundaries, i.e., if it refers to a 'subdivision of the earth--regions, counties, town[s], rivers, lakes, and other artificial geographic units,'" *citing* Burke-Parsons-Bowlby v. Appalachian Log Homes, 871 F.2d 590, 10 USPQ2d 1443, 1445 (6th Cir. 1989).

As to applicant's argument that the term "Balashi" is not primarily geographically descriptive because the record shows that it has other meanings in that it also identifies a variety of cabbage and a location in Bangladesh, the Examining Attorney maintains that:[3]

---

[3] The Examining Attorney, in her brief, accurately observes in addition that applicant, in its initial brief, "has made some confusing statements with regard to the examining attorney's advisory comments with respect to Section 2(f) of the Trademark Act," 15 U.S.C. 1052(f). Specifically, in her July 20, 2005 denials of applicant's requests for reconsideration of the final refusal in each of these appeals, the Examining Attorney in each instance stated, among other things, that:

> Applicant's arguments seem to address the issue of acquired distinctiveness.  If applicant were to file an allegation of use, applicant would be able to seek registration under Section 2(f) of the Trademark Act.  Given the amount of evidence demonstrating that the term has

> The fact that a term may have other meanings
> in other contexts does not necessarily negate
> the basis for refusal as long as the most
> prominent meaning or significance is
> geographic for the identified goods. *In re*

secondary meaning, applicant would be able to register the
mark on that basis.

Seizing upon the latter statements, and noting that "[i]f a mark with
a geographical meaning also has popular significance apart from the
geographical meaning, it will not be **primarily** geographical" (emphasis
in original), citing In re International Taste Inc., 53 USPQ2d 1604,
1605-06 (TTAB 2000), applicant in its initial brief argues that
(emphasis in original):

> There is evidence of record to show that "Balashi" has
> alternative non-geographical meanings, i.e. that the term
> refers to a type of cabbage and also to a remote location in
> Bangladesh. .... However, applicant calls this Board's
> attention to the more compelling and overwhelming evidence
> of record which is that **U.S consumers of beer *primarily*
> identify "Balashi" with Applicant**.
>
> Applicant has been in business since 1999. .... In
> the six (6) years Applicant has been in business, Applicant
> has not advertised, promoted, or shipped any **BALASHI**
> products to the United States. .... Nevertheless, the
> evidence supports a finding that the mark **BALASHI** has
> acquired secondary meaning to purchasers in the United
> States. .... **Even the Examiner agrees that if Applicant
> were to file an allegation of use, Applicant would be able
> to seek registration under Section 2(f)**. July 20, 2004
> [sic; 2005] Office Actions, p. 2. The Examiner states,
> "Given the amount of evidence demonstrating that the term
> has secondary meaning, applicant would be able to register
> the mark on that basis." Id. This is clear recognition of
> secondary meaning by the PTO. By definition, this means
> that the **primary significance** of the term "Balashi" to
> American consumers is Applicant's **BALASHI** beer.

Applicant insists in its reply brief, however, that "[t]he
Examiner mischaracterizes Applicant's position with regard to
registrability and Section 2(f) of the Trademark Act," asserting that
"Applicant's arguments have made no reference to Section 2(f)
whatsoever" notwithstanding that the gist of its further comments is
to reiterate its argument concerning acquired distinctiveness, i.e.,
"secondary meaning." Applicant plainly is confusing marks which are
not primarily geographical because of other prominent, significant
meanings (e.g., in mark "HOLLYWOOD FRIES" and design for "french
fries" and "fast food restaurants," term "HOLLYWOOD" also refers to
the entertainment industry in general and not just to a geographical
location, id. at 1604-05) with marks which have acquired secondary
meaning. Nonetheless, to the extent that applicant insists that it is
not alternatively claiming acquired distinctiveness, no further
consideration will be given to its argument that another meaning for
the term "BALASHI" is its identification by consumers with applicant.

6

> *Opryland USA Inc.*, 1 USPQ2d 1409 (TTAB 1986);
> *In re Cookie Kitchen, Inc.*, 228 USPQ 873
> (TTAB 1986); TMEP §1210.02(b)(i). In this
> case, the primary significance of Balashi is
> geographic for the identified goods.

Presumably, the Examining Attorney maintains that any other meaning for the term "Balashi" is outweighed by its significance as a location in Aruba, concluding that the primary significance of such term is therefore geographical.

As to her contention that the geographical location named by the term "Balashi" is neither obscure nor remote, and thus that a public association of applicant's beer with such place should be presumed from the fact that the its goods admittedly come from the geographical place named in or by, respectively, the marks "BALASHI BEER" and "BALASHI," the Examining Attorney asserts in her brief that "[t]he named geographic location need not be famous, but rather only likely to be associated with applicant's goods," *citing* In re Loew's Theatres, Inc., 769 F.2d 764, 226 USPQ 865, 868 (Fed. Cir. 1985). The Examining Attorney argues, based upon, *inter alia*, the facts that applicant's "address of record indicates that it is located in Balashi"; that "[s]everal dictionaries of record attached to the office action[s] of July 20, 2005, demonstrate that applicant's brewery is located in Balashi"; and that applicant "has conceded that its beer production facility is located in Balashi," that "[p]urchasers are likely to believe the goods will originate in that geographic location because applicant is located there."

7

Furthermore, the Examining Attorney correctly notes in this regard that "[r]emoteness or obscurity is determined from the perspective of the average American consumer," *citing* In re Societe Generale des Eaux Minerales de Vittel S.A., <u>supra</u> at 3 USPQ2d 1452. She contends that "[i]n this circumstance, the average American consumer would have ample reason to recognize Balashi as the geographic source for applicant's beer" because:

> First, it is important to note that Aruba is an important travel destination for American tourists. The following, incorporated into the office action[s] of July 20, 2005, is found at www.aruba.com under FAQ.
>
> Where do tourists mainly come from? Aruba's largest tourism market is the US with 75% market share, followed by Latin America (Venezuela, Colombia) and Holland.
>
> In addition, Aruba's airport facility is state-of[-]the[-]art and has special arrangements for visitors from the United States. For example, U.S. bound passengers have their own terminal building that houses a U.S. INS/Customs facility, allowing flights from Aruba to enter the U.S. as domestic flights. .... Accordingly, Aruba is a well known and easily accessible destination to those in the United States.
>
> Second, [readily available website] travel information for those visiting Aruba often makes reference to Balashi. For example, [the record shows that] Balashi is listed as a worthwhile place to see. .... Those providing [travel] information about Aruba make reference to Balashi because of its historical significance to the gold industry. .... Those providing travel information also mention Balashi because the second largest desalination plant in the world is located in Balashi. .... It has also been noted that there are many requests to tour this plant. .... Therefore, those who travel to Aruba or are considering such

8

travel will be exposed to information about Balashi.

In addition, readily available information about Balashi beer makes reference to the geographic origin of the name. For example, the following is of record:

Balashi National Brewery Inc. situated as [sic] Balashi, home of Aruba's largest gold smelting industry in the late nineteenth and early twentieth century, as well as for Aruba's world famous [fresh] water production industry the WEB, is the newest addition to Aruba's broadening economic development ...[.] For many reasons and following beer tradition, the brewery was named after this well known area. .... [and]

... all of **Balashi** products will from now on be nicely stamped, *Made in **Aruba***, bearing a little turquoise, yellow and red flag. ....

Referring, in addition, to "an email communication between two apparently American beer consumers discussing the geographic origin of Balashi beer"[4] and to "a reference to a web site clearly available to American beer consumers referencing Balashi beer and identifying it as brewed in Balashi, Aruba,"[5] the Examining Attorney concludes in her brief that:

All of this information demonstrates that Americans have easy access to Aruba, that Balashi is often mentioned in travel

---

[4] Such communication actually consists of an inquiry posted on the website "www.arubatravelinfo.com" by a "Bill Balaschi," who states that he "recently had my first Balashi beer" and "[w]ould like to know more about the name since it is so close to mine," and a reply from a "Dee," who indicates that "[t]he name Balashi ... comes from a region of the island [of Aruba] called Balashi" and notes that "[t]his is the info we received while in Aruba gained from reading and talking with the Islanders."

[5] The reference, from "BeerAdvocate.com," describes "Balashi" as "[a]n Adjunct Lager brewed by Browerij Nacional Balashi in Balashi, Aruba."

> information for those visiting or reading
> about Aruba, that the geographic area named
> Balashi is known to be the source of the name
> for Balashi beer, and that Americans have
> reason to know this. Therefore, Balashi is
> not geographically remote or obscure from the
> perspective of the average American consumer
> of beer.

We concur with applicant, however, that the primary significance of the term "Balashi" is not geographical to beer purchasers in the United States. Specifically, while we disagree with applicant that such consumers would be aware of alternative meanings of such term as a variety of cabbage and a place in Bangladesh, since the present record reflects that those meanings are even more obscure than the geographical significance thereof as a location in Aruba, we agree with applicant that "Balashi" is so obscure or remote that purchasers of beer in the United States would typically fail to recognize the term as indicating the geographical source of applicant's goods.

In particular, as the Examining Attorney has noted, applicant in its initial brief "concedes that there is a neighborhood referred to by locals in Aruba as 'Balashi' and that Applicant's beer production facility is located in that neighborhood." Applicant maintains, however, that the primary significance of such location to the relevant American public "is Applicant's beer, not a place," inasmuch as "[t]he geographical meaning of the term 'Balashi' is minor since the neighborhood is obscure and remote." While one excerpt, which the Examining Attorney made of record from the "Absolute Real Estate" website, would appear to support applicant's position in that it describes

10

"Balashi" as a "[q]uiet area near Aruba's famous Beer brewery," another excerpt, which the Examining Attorney also made of record from the tourism website "aruba-info.com," would seem to suggest that the opposite is true of such locale since it states, as previously mentioned, that "the brewery was named after this well-known area." Applicant, as support for its position and to counter the latter, has submitted in each of its applications a declaration of its financial controller, Mr. Giovanni Kock, and a declaration of its managing director, Mr. Eduard I.J. DeVeer,[6] as well as what applicant characterizes as "photographs of the area known as 'Balashi' in Santa Cruz, Aruba" and "exhibits such as dictionary references, encyclopedia references, and webpages evidencing the obscurity of 'Balashi' ...."

Specifically, Mr. Kock's declarations state in relevant part that he is an adult resident of Aruba; that he has been applicant's financial controller for three years; that applicant "is located in the area known as Balashi"; that it has been in business since 1999 and has exclusively used the marks "BALASHI BEER" and "BALASHI" in connection with its products since that time; that applicant does not export such products to the United States nor does it advertise in or target any advertising to the United States; that, instead, applicant advertises only in Aruba; that "Balashi is a locality or neighborhood in the Santa Cruz District of Aruba"; that "Balashi is not the name of a city in Aruba" nor is it "the name of a county or district in Aruba";

---

[6] Mr. Kock's declarations, like those of Mr. DeVeer, are identical except for the references therein to "BALASHI BEER" and "BALASHI."

that "Aruba's largest cities are Oranjestad, Aruba's largest and capital city, and Saint (Sint) Nicoles," which "cities are located in the western and southwestern areas of Aruba"; that "Oranjestad, Palm Beach, and Eagle Beach are the most popular tourist destinations"; that "[t]here are no hotels, motels, or visitor accommodations in Balashi" and there is only "a single seafood restaurant in Balashi, Aruba called Marina Pirata"; that "[t]here are two main roads passing through Balashi," one of which "is a two-lane paved road called Barcardera that runs along the southern coast of the island and [the other of which is] Main Road, a two-lane paved road, connecting Oranjestad and Sint Nicolas"; that "[t]here is no post office in Balashi"; that "[t]here are no public or private schools in Balashi"; that "[t]here are no churches in Balashi"; that "[t]here is no public transportation that originates in Balashi"; that, instead, "[t]here is a single bus stop in Balashi for public transportation passing through the area"; that "[t]here is no local government for the area known as Balashi"; that "Aruba is part of the Kingdom of the Netherlands" and has "a single administrative branch of government for the country ... located in Oranjestad, Aruba"; that, according to "the Central Bureau of Statistics, located in Oranjestad, Aruba," "[a]s of 2002, it is estimated that approximately 12,000 people live in the district of Santa Cruz, 10% of which is attributable to the area of Balashi"; and thus that "approximately 1,200 people, or 1% or

[sic] of Aruba's population, live in Balashi, Aruba" as of 2002, the latest year for which population information is available.

Mr. DeVeer's declarations, in pertinent part, similarly state that he is an adult resident of Aruba; that he has been applicant's managing director for four years; that applicant "is located in the Santa Cruz District of Aruba"; that it has been in business since 1999 and has exclusively used the marks "BALASHI BEER" and "BALASHI" in connection with its products since that time; that applicant has not exported such products to the United States nor does it advertise in or target any advertising to the United States; that, instead, applicant "only advertises in print, radio, and television media in ... Aruba"; that "'Balashi' is the nickname of an area, akin to a neighborhood, in the Santa Cruz District of Aruba (hereinafter referred to as the 'Area')"; that "the Area has no definite boundaries"; that "the Area is not the name of a city, village, or other government-recognized municipal entity in Aruba" nor is it "the name of a county, district, or other political division in Aruba"; that "[t]here is no local government for or in the Area"; that "the Area is not a tourist destination" since "[t]here are no hotels, motels, or visitor accommodations in the Area" and there is only "a single seafood restaurant in the Area called Marina Pirata"; that "[t]here are two main roads passing through the Area," one of which is "Barcardera, a two-lane paved road that runs along the southern coast of the island and [the other of which is] Main Road, a two-lane paved road, connecting Oranjestad and Sint Nicolas"; that "[t]here is no post office in the Area"; that

13

"[t]here are no public or private schools in the Area"; that
"[t]here are no churches in the Area"; that "[t]here is no public
transportation that originates in the Area"; that, instead,
"[t]here is a single bus stop in the Area for public
transportation"; and that, except for applicant, "[t]here is
little commercial activity in the Area." In addition, Mr.
DeVeer's declarations recite that "[a] report of the Aruba
Tourism Authority indicates that in 2004, citizens from the
United States represented 66% of the total number of visitors to
Aruba"; that while "[t]here once was a gold mine located in the
Area, ...the gold mine was never known as the 'Balashi Gold
Mine'"; that "the immediate area surrounding the former gold
mines solely consists of a few buildings which are badly
maintained and run down"; that "copies of photographs of the
signs directing travelers toward the 'Gold Mines' and the area of
the former 'Gold Mines' are attached"; that, however, applicant's
"beer production facility ... is a popular tourist destination";
that consumers from the United States "often contact" applicant
"for personalized tours of its ... production facility"; that,
since its opening in 1999, applicant has conducted "numerous
tours of its ... production facility approximately three (3)
times per week"; and that, "as our guestbook pages reflect, the
majority of our tour guests are from the United States."

Based upon such declarations, and in view of other
exhibits which it has introduced as evidence as to the primary
significance of the term "Balashi," applicant persuasively argues
in its initial brief that the "record establishes that the

14

geographical significance of 'Balashi' is minor, obscure, and remote."  Applicant, among other things, specifically points out that Balashi" is not the name of a city, county or district within the island "country" of Aruba; that it "is a small and commercially insignificant neighborhood in the district of Santa Cruz with no boundaries and no official status"; and that there are no hotels, government offices, post offices, churches or schools in Balashi, which has only a single restaurant.  In fact, as applicant observes, the record shows that (footnotes omitted; emphasis in original):[7]

> "Balashi" is so insignificant, geographically, that it is ... [almost] impossible to find a geographic map identifying it as a place.  The Examiner referenced a single map ... to support her argument that the primary significance of "Balashi" is geographical.  ....  In stark contrast, Applicant has submitted into evidence fourteen (14) maps which fail to identify "Balashi" as a geographical place. ....
>
> The obscurity and remoteness of this "place" is further evidenced by its omission in other heavily-relied upon references[,] namely encyclopedias and dictionaries. Researching the term "Balashi" in any one of a number of reliable and popular online encyclopedias (i.e., Encyclopedia Brittanica [sic], Encyclopedia.com, and Encarta) returns absolutely <u>no</u> results.  ....  The same is true for a search of Merriam-Webster's Dictionary.  ....  Clearly, this cumulative and reliable evidence supports the fact that the area is, at a minimum, comparatively unimportant, secluded, and unknown.

---

[7] Applicant is incorrect, however, in asserting that the "Examiner's map inaccurately identifies 'Balashi' as an island off the coast of Aruba" since a careful review of such map reveals that it is indeed a map of Aruba which pinpoints only the location of the area of Balashi.

> Applicant concedes that there is some limited evidence to show that the neighborhood of "Balashi" was known as an area where gold was discovered in the 1800's and is currently home of Aruba's water desalination plant. .... However, such limited evidence does not prove that "Balashi" is *immediately perceived* by **U.S. consumers** as a geographical place.

> The Board need only examine recent photographs of the area to see how remote this neighborhood, for lack of a better word, is. ....

We consequently agree with applicant that "[t]his case is factually similar to" both In re Bavaria St. Pauli Brauerei AG, 222 USPQ 926, 927-28 (TTAB 1984), in which the Board found the term "JEVER," in an application to register the mark "JEVER" and design for "beer" which was produced in the German town of Jever, to have only an obscure geographical meaning and thus the mark was not primarily geographically descriptive,[8] and In re Societe Generale des Eaux Minerales de Vittel S.A., supra at 3 USPQ2d 1452, in which our primary reviewing court found that:

> There can be no doubt that the PTO has established that Vittel is in fact the name of a small town in the Voges mountain region of France where there is a resort with mineral springs--a spa-- where the water is bottled and thence distributed somewhere, but how many people in this country know that?

---

[8] The sole evidence presented therein consisted of "a listing from the 1952 edition of the Columbia Lippincott Gazetteer of the World, in which Jever is identified as a town of 10,342, ten miles from Wilhelmshaven in northwest Germany" which "features a 'rail junction; woolen milling, brewing, meat processing' and 'horse and cattle markets.'" In re Bavaria St. Pauli Brauerei AG, supra at 927. In particular, on the basis of such record, the Board stated that "a genuine issue was raised concerning the obscurity of the geographical meaning of 'JEVER', and the single entry from an outdated gazetteer is insufficient to establish, as a threshold matter, that purchasers would make a goods/place association upon encountering 'JEVER' beer.'" Id. at 928 n.2.

> Certainly Vittel is remote and we deem the evidence produced by the PTO insufficient to show that it is not obscure. We think the evidence is inadequate to show that the bulk of cosmetics purchasers, or even a significant portion of them, would upon seeing the word Vittel on a bottle of skin lotion or the like, conclude that it is a place name and that the lotion came from there, rather than simply a trademark or trade name of a manufacturer like Chanel, Bourgois, or Vuitton.

We would add that this appeal is also like In re Brauerei Aying Franz Inselkammer KG, 217 USPQ 73, 75 (TTAB 1983), in which the Board held the term "AYINGER," in an application to register the mark "AYINGER BIER" ("BIER" disclaimed) for "beer" which was produced in the German town of Aying, to have only a minor, remote or obscure geographical significance and thus the mark was not primarily geographically descriptive.[9] In so finding, the Board pointed out that:

> The evidence relied upon here is inadequate .... The Examining Attorney has not provided any evidence which would refute the ... obscurity of Aying or establish that it is known ... as a beer producing area. Quoting Judge Nies in her concurring opinion in ... [In re Nantucket, Inc., 677 F.2d 95, 213 USPQ 889, 897 (CCPA 1982)], "A geographic name is not unprotectible or unregistrable because it can be labeled a geographic name, but because it tells the public something about the product or the producer absent which his competitor also has a right to inform the public. Thus, the names of places devoid of commercial activity are arbitrary usage." We would add that where the geographic significance of a name is lost on

---

[9] The applicant therein contended that Aying "is a tiny hamlet in Bavaria having only 500 inhabitants." In re Brauerei Aying Franz Inselkammer KG, supra at 74-75. The Board agreed, concluding from the record presented that "we are dealing with a tiny village unknown to the public as far as we can see." Id.

> the public because of obscurity, there too,
> the usage becomes arbitrary.

Id. at 75.  Here, "Balashi" would be perceived as an arbitrary term which would serve to identify and distinguish applicant's goods because its geographical significance is essentially unknown to the relevant public, given that the record contains insufficient evidence to show that American beer consumers would in fact readily recognize "Balashi" as a geographical name.

We further agree with applicant that, as stated in its initial brief, "the evidence of record, at a minimum, creates a genuine issue regarding the primary significance of 'Balashi' in the minds of American beer consumers."  Accordingly, a goods/place association cannot be presumed from the fact that applicant's goods come from Balashi and it is incumbent upon the Examining Attorney to have presented evidence sufficient to establish that American consumers of beer would in fact make such an association.  We concur with applicant, however, that the Examining Attorney has failed to do so.  Here, the travel and tourist information of record plainly shows that presently, the principal industry of Aruba is tourism rather than, for instance, gold smelting, oil refining, fresh water production or beer brewing.  For example, as stated in the except furnished by the Examining Attorney from the "www.odyessi.com/travel/aruba.php" website:

> **Travel to Aruba** – Discovered and claimed for Spain in 1499, Aruba was acquired by the Dutch in 1636.  The island's economy has been dominated by three main industries.  A 19th century gold rush was followed by prosperity brought on by the opening in 1924 of an oil

18

> refinery.  The last decades of the 20th century saw a boom in the tourism industry. Aruba seceded from the Netherlands Antilles in 1986 and became a separate, autonomous member of the Kingdom of the Netherlands. ....  A flat, riverless island renowned for its white sand beaches; its tropical climate is moderated by constant trade winds from the Atlantic Ocean; the temperature is almost constant at about 27 degrees Celsius (81 degrees Fahrenheit).

To the same effect, an excerpt from the website "www.lonelyplanet.com/destinations/caribbean/aruba/history.htm," which was made of record by both the Examining Attorney and applicant, provides that:

> ....  The first European to stumble upon Aruba was Alonso de Ojeda, a compatriot of Columbus, who claimed the island for Spain in 1499.  ....  Conflict in Europe between Spain and Holland resulted in the Dutch seizing the island in 1636, and the Dutch began to colonise [sic] Aruba at the end of the 17th century.

> ....  The British arrived in 1805 ... but sailed into the sunset in 1816.  Less than a decade later, the first of Aruba's three economic booms took place when gold was discovered near Balashi.  A flood of gold hungry immigrants arrived from Europe and Venezuela, and mining continued right up until 1916.

> When the mines became unproductive, Aruba turned to oil refining in a big way. In 1929, the world's largest refinery was built on the southeastern tip of the island. Things hummed along quite swimmingly until the 1940s, when Aruba began to resent playing second fiddle to Curacao in the federation known as the Netherlands Antilles .... Aruban calls for autonomy became increasingly strident over the next 40 years, and in 1986 Aruba finally got its way and became an autonomous state within the Kingdom of the Netherlands.

**Ser. Nos.** 78304942 and 78304953

> The new level of independence came close on the heals of a severe economic downturn, prompted largely by the closure of Aruba's oil refinery. Having exhausted the real gold and refined the black gold, the Arubians turned to tourism to bankroll their future. Despite the economic autonomy enabled by the tourist boom, plans for full independence in 1996 were shelved.
>
> Investment in the island's tourist infrastructure has been little short of phenomenal, and Aruba now boasts more than 6000 hotel rooms and almost a million visitors each year. Tourism is now very much the mainstay of the island's economy. ....

Additionally, an excerpt made of record by the Examining Attorney from the website "www.aruba-tours.com/info/drinking.html" shows that Balashi, Aruba, is home to the world's second largest water desalination plant:

> There is no need to buy bottled water in Aruba, the island's tap water is pure and refreshing, distilled in the world's second largest saltwater desalination plant. .... The plant is called the WEB, and there are many requests to tour the plant that is located in Balashi.

We agree with applicant that while Balashi, *inter alia*, has some historical significance as a gold mining and smelting area and is also the location of Aruba's desalination plant, it is nonetheless the case that, as stated in applicant's reply brief, the Examining Attorney's "conclusion that 'Balashi' is a 'significant geographic location in Aruba' does not follow from these two facts," much less that "American consumers perceive 'Balashi' as a 'significant geographic location in Aruba.'" In

20

fact, none of the evidence relied upon by the Examining Attorney[10]
serves, as applicant argues in its reply brief, to establish that
beer drinkers in the United States would make a goods/place
association between the name "Balashi" and beer.

In particular, applicant persuasively points out
therein that (footnote omitted; emphasis in original):

> [The] Examiner makes the unsubstantiated
> conclusion that the "average American
> consumer would have ample reason to recognize
> Balashi as the geographic source of
> applicant's beer."  ....  The Examiner
> concludes that a majority of Americans know
> the geographical significance of "Balashi"
> from the fact that 75% of Aruba's visitors
> come from the United States.  This conclusion
> is mind-boggling.  This says nothing about
> how many travelers from the U.S. travel to
> Aruba.  Based on the Examiner's logic, if
> four visitors traveled to Aruba and three of
> them were from the U.S., this would mean a
> "majority of Americans" travel to Aruba.  The
> conclusion does not logically follow the
> premise.  Moreover, the Examiner concludes
> that Aruba is a "well-known and easily
> accessible destination to those in the United
> States" simply because U.S. ... passengers
> have a special terminal and enter Aruba as if
> traveling on [a] domestic flight.  ....
> Flight arrangements from the U.S. to Aruba do
> not impact whether or not "Balashi" is
> geographically significant to American beer
> consumers.  Whether the country of Aruba is
> known to Americans is not relevant to whether
> "Balashi" is recognizable to American beer
> consumers in the United States as a place

---

[10] In a footnote to its reply brief, applicant notes that in denying
its requests for reconsideration, "[t]he July 20, 2005 Office Actions
reference www.aruba.com in their allegation that 'Aruba's largest
tourism market is the US with 75% market share'" and accurately
observes that "the Examiner fails to attach copies of the webpages as
evidence."  While not the preferred practice, we nevertheless consider
such evidence as part of the record, notwithstanding applicant's
belated objection thereto in its reply brief, since the Examining
Attorney stated in her actions with respect thereto that "[t]he
following is found at www.aruba.com. under FAQ," thereby giving
applicant adequate notice of the source of her factual information.

name. That would be equivalent to saying that because Americans know the country of France, American cosmetic consumers would immediately recognize VITTEL as a place name. In re Societe General Des Eaux Minerales De Vittel, S.A., 824 F.2d 957 (Fed. Cir. 1987). This clearly unsound reasoning was rejected by the Federal Circuit.

The Examiner makes the unjustified leap that since "Balashi" is home to a water desalination plant, "those who travel to Aruba or are considering such travel will be exposed to such information about Balashi." .... Again, the conclusion does not follow the premise. The Examiner also suggests that because gold was discovered near "Balashi" in the late nineteenth century, the place name is significant to American beer purchasers today. .... There is no evidence that this obscure historical fact is known or recognized by Americans today. Americans intending to travel to Aruba might come across this information in their research, but that does not prove that American beer purchasers, in general, primarily associate "Balashi" with a place.

The Examiner references an excerpt from the website www.visitaruba.com discussing the fact that all of the "Balashi products will from now on be nicely stamped 'made in Aruba' ...." .... This proves that Applicant's **BALASHI** products are primarily identified with the country of Aruba[,] not with the unrecognized neighborhood in Santa Cruz, Aruba. This further proves that "Balashi" is remote and obscure. ....

One of the Examiner's citations, inaccurately described as an "email communication between two apparently American beer consumers," does not support the Examiner's position that the term is "geographically significant to beer consumers." .... The evidence referenced is actually an excerpt of postings from a web-board. .... The communication evidences just how remote and obscure this neighborhood of "Balashi" is. The person who purportedly wrote this posting investigated the name "Balashi" by reading, traveling to Aruba, and talking to native Arubans. .... If knowing

22

the origin of the term "Balashi" requires personal interviews in Aruba and reading Aruban history, it does not follow that American beer purchasers will immediately recognize it as a place name.

The Examiner erroneously concludes that Americans know the geographic significance of "Balashi" because "Americans have easy access to Aruba...Balashi is often mentioned in travel information for those *visiting* or *reading* about Aruba, [and]...the geographic area named is known to be the source of the name for Balashi beer."  ....  However, the only conclusion that can be drawn from these facts is that to know that "Balashi" has **any geographic significance at all** requires research -- traveling or reading about Aruba. That, in and of itself, defeats the refusal to register the **BALASHI** marks because to be ***primarily geographically significant, the mark must immediately convey a geographical place***.  In contrast, it is unlikely that Americans visit or read about "Nashville" or "Manhattan" to know the geographic significance of these metropolitan areas within the United States.

We concur that in dealing with the supposed reactions of a segment of the American public, in this case the average American beer consumer and not the unusually well-traveled tourist or even the aficionados of foreign beers, the isolated area or neighborhood of Balashi in the Caribbean island of Aruba is simply so minor, remote and obscure that its geographic significance would not be known or otherwise readily apparent to purchasers of applicant's beer.  To be sure, the average American beer consumer, after perhaps quaffing a few "brews" while spending some time lying around on, or at least contemplating a vacation to, the white sand beaches of Aruba that serve as the island's principal tourist destinations, might have occasion to research and/or check out whatever other attractions, including

23

gold mine ruins, a large desalination plant and applicant's brewery, would be of interest as a side trip to the locale of Balashi.  The geographical significance, however, of the term "Balashi" would not be apparent without, at a minimum, consulting sources of tourism information.  We consequently hold that, on this record, the Examining Attorney has failed to establish that the term "Balashi" is a place name which is generally known, that is, is not remote or obscure in its geographical significance, to American beer consumers and thus has not shown a reasonable basis for concluding that the marks "BALASHI BEER" and "BALASHI" are primarily geographically descriptive of applicant's goods within the meaning of the statute.

**Decision**:  The refusals under Section 2(e)(2) are reversed as to each application.